# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**C-INNOVATION, LLC,**
  **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**No. 10-4441**

**NORDDEUTSCHE
SEEKABELEWERKE GMBH,**
  **Defendant**

**SECTION "E"**

## ORDER AND REASONS

Before the Court is defendant Norddesutsche Seekabelewerke GMBH's ("NSW") "Motion to Dismiss Plaintiff's First Amended and Supplemental Complaint Pursuant To Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, a Motion for More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e)."[1]  For the reasons set forth below, NSW's motion for a more definite statement is denied. NSW's motion to dismiss is granted in part and denied in part.

## BACKGROUND

This case arises from the sale of allegedly defective umbilical cables used in underwater oil and gas exploration.  Plaintiff C-Innovation, LLC ("C-Innovation") operates underwater robots called remotely operated vehicles ("ROVs"), which are used in oil and gas drilling operations. The cables at issue in this case are used to tether ROVs to ships.  C-Innovation alleges that it purchased seventeen cables manufactured by NSW.  Twelve of these cables were purchased directly from NSW.[2]  C-Innovation purchased three of the

---

[1] R. Doc. 94.

[2] R. Doc. 1; *but see* R. Doc. 127-1 (NSW's memorandum in support of motion for summary judgment, in which NSW argues that eleven cables were purchased directly from NSW, but states that the difference is irrelevant to the summary judgment).

cables at issue from Schilling Robotics, LLC ("Schilling"), and the other two from Phoenix International Holdings, Inc. ("Phoenix").

C-Innovation alleges that the cables are defective, and that they failed repeatedly, causing C-Innovation to incur extra expense to purchase replacement cables from a different company. C-Innovation's original complaint asserts causes of action against NSW for redhibitory defects[3] and for breach of warranty, and in the alternative, for damages under the Louisiana Products Liability Act ("LPLA").[4]  After this Court determined it has personal jurisdiction over NSW,[5] C-Innovation moved to amend its complaint to add a claim for damages as a result of NSW's fraudulent conduct.[6]   NSW opposed the amendment, but leave was granted, and C-Innovation's amended complaint was filed into the record.[7]   C-Innovation's fraud allegations arose after C-Innovation claims to have learned, through discovery, that NSW sold C-Innovation the cables even though NSW knew that the cables were defective and knew other customers had experienced the same problems as C-Innovation.[8]

NSW now moves to dismiss the breach of contract based fraud claims asserted in C-Innovation's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[3] *See* LA. CIV. CODE art. 2520 *et seq.*

[4] L A. REV. STAT. ANN. § 9:2800.52 *et seq.*

[5] *See* R. Doc. 42.

[6] *See* R. Doc. 84.  In opposition to NSW's motion to dismiss, C-Innovation clarifies that this claim is for "breach of contract based fraud."  *See* R. Doc. 112 at p. 1.

[7] R. Doc. 92.

[8] *See id.*

Procedure.[9]  NSW argues that under Louisiana law the LPLA and the law of redhibition provide the exclusive remedies for a consumer in a suit against a manufacturer, and, thus, that C-Innovation's breach of contract based fraud claim must be dismissed.[10]  NSW also argues that C-Innovation's breach of contract based fraud claim seeks only economic damages which are barred under the economic loss doctrine, and as a result C-Innovation may not recover damages under this claim.[11]  Alternatively, NSW argues that C-Innovation's fraud claims are not pled with sufficient particularity as required by Rule 9(b) and, because the defects in the pleading cannot be remedied, the claim should be dismissed.  Finally, and in the further alternative, NSW argues, pursuant to Rule 12(e), that, if the Court allows the fraud claim to go forward, C-Innovation should be required to give a more definite, specific statement of its fraud allegations as required by Rule 9(b).

In opposition, C-Innovation argues that its damages are not purely economic, and that its fraud allegations survive a Rule 12(e) attack as they are specific enough to meet the heightened pleading standard applicable to fraud claims.[12]

On September 5, 2012, the Court heard oral argument on NSW's motion to dismiss.[13]  After oral argument, the Court ordered the parties to submit supplemental briefing directed

---

[9] R. Doc. 94.

[10] *See id.*; *see also* R. Doc. 103.

[11] Because Louisiana does not recognize the economic loss doctrine, *see In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 796 (E.D. La. 2010), the Court will not address this argument.  The Court will address NSW's other arguments regarding the economic nature of C-Innovation's fraud claim in the context of its discussion of whether those claims are barred by the LPLA's exclusivity provision.

[12] R. Doc. 99.

[13] R. Doc. 117 (Transcript from September 5, 2012 oral argument).

3

at the issue of which damages sought by C-Innovation could be recovered through its redhibition and LPLA claims, and which damages could only be recovered through C-Innovation's fraud claim.[14]  In its supplemental briefing, C-Innovation argues that its LPLA, fraud, and redhibition claims are alternative theories, and that all of its damages are recoverable under any of the three.[15]  C-Innovation also argues that, in the event that the Court determines the LPLA does not apply in this case, it should be allowed to assert its fraud claim.[16]  NSW refutes these arguments set forth in C-Innovation's supplemental briefing, and reiterates that the LPLA forecloses C-Innovation from asserting a fraud claim.[17]

## ANALYSIS

### I.   NSW's Rule 9(b) and Rule 12(e) Challenges to C-Innovation's Fraud Claim

#### A.   Fraud Pleading Standard

Federal Rule of Civil Procedure 9 provides a heightened pleading requirement for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements

---

[14] *See* R. Doc. 108 (C-Innovation's first supplemental brief); R. Doc. 106 (NSW's first supplemental brief); R. Doc. 112 (C-Innovation's second supplemental brief); R. Doc. 115 (NSW's second supplemental brief).

[15] R. Doc. 108; R. Doc. 112.

[16] *See id.*

[17] *See* R. Doc. 106; R. Doc. 115.

contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert. denied*, 130 S.Ct. 199 (2009).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotation omitted).  "The particularity demanded by Rule 9(b) . . .is supplemental to the Supreme Court's . . . interpretation of Rule 8(a)[18] requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (footnote added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

Louisiana law defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code Ann. art. 1953. "Fraud may also result from silence or inaction." *Id.* The elements of a Louisiana fraud or intentional misrepresentation claim are: "(1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury."[19]  *Kadlec Med. Ctr. v. Lakeview*

---

[18] Rule 8 provides that a pleading stating a claim for relief must contain a "short and plain statement" of the grounds for the Court's jurisdiction and the pleader's claim, as well as a demand for the relief sought.  Fed. R. Civ. P. 8 (a).

[19] In cases concerning "omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading." *Carroll v. Fort St. James Corp.*, 470 F.3d 1171,

*Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008), *cert. denied*, 555 U.S. 1046 (2008).

A failure to plead fraud with sufficient particularity is raised by motion for a more definite statement because the complaint is so "vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). A district court's order pursuant to Rule 12(e) will not be reversed absent an abuse of discretion. *Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989).

### B.     C-Innovation's Fraud Claim is Sufficiently Pled

NSW contends that C-Innovation's fraud claim is not pled with sufficient particularity and/or is too vague or ambiguous for NSW to reasonably prepare a response. Thus, NSW argues, C-Innovation should be required to provide a more definite statement of its fraud claim, or, if the defect in pleading cannot be remedied, the fraud claim should be dismissed for failure to state a claim. The Court finds NSW's contentions to be without merit. C-Innovation's amended complaint setting forth its fraud claim fully complies with the directive in Rule 9(b) that such a claim be pled with particularity. *See* FED. R. CIV. P. 9(b). C-Innovation's amended complaint sets forth with particularity all of the elements of a prima facie fraud claim under the Louisiana Civil Code. *See* LA. CIV. CODE ANN. art. 1953; *see also Kadlec Med. Ctr.*, 527 F.3d at 418 (setting forth elements of prima facie fraud claim under Louisiana law). The amended complaint includes allegations regarding the

---

1174 (5th Cir. 2006) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, 355 F.3d 370, 381 (5th Cir. 2004)). To state a claim for fraud by silence or inaction, plaintiffs also must show that the there was a duty to disclose the information. *Kadlec Med. Ctr.*, 527 F.3d at 418 ("To establish a claim for intentional misrepresentation when it is by silence or inaction, plaintiffs also must show that the defendant owed a duty to the plaintiff to disclose the information."); *see also Greene v. Gulf Coast Bank,* 593 So.2d 630, 632 (La. 1992) ("To find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information."). "Fraud by silence . . . is, by its very nature, difficult to plead with particularity." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993) (internal quotation omitted).

specific information allegedly concealed by NSW, adequately describes the time period in which the alleged fraud occurred, and includes allegations relating to the advantage NSW allegedly gained by concealing information regarding the cables' defects.  Likewise, C-Innovation has set forth with particularity an allegation that NSW had a duty to disclose information regarding the cables' defects to C-Innovation, and that NSW violated that duty by not disclosing the information.  *See Kadlec Med. Ctr.*, 527 F.3d at 418.  The Court finds that the amended complaint complies with Rule 9(b).  As a result, C-Innovation's fraud claim is not vague or ambiguous, and NSW will be able to adequately respond to the claim. NSW's motion for a more definite statement of C-Innovation's fraud claim pursuant to Rule 12(e) is denied.

### IV.    NSW's Rule 12(b)(6) Challenge to C-Innovation's Fraud Claim

Having determined that C-Innovation's fraud claim is sufficiently pled under Rule 9(b), such that no amendment to the pleading is required under Rule 12(e), the Court now turns to NSW's Rule 12(b)(6) attack on C-Innovation's fraud claim.  With respect to C-Innovation's allegations of fraud, NSW argues that C-Innovation has failed to state a claim on which relief can be granted because the only causes of action available to the plaintiff are the LPLA and redhibition and claims for fraud are not recoverable under these theories.

### A.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to  set forth a factual allegation in support of its claim that would entitle it to relief (i.e. for "failure to state a claim").  *See, e.g. Twombly*, 550 U.S. at 555; *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).  Those factual allegations "must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600,

603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the non-moving party, *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009), but the Court need not accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

## B.   The Exclusivity of the LPLA

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. Ann. § 9:2800.52.  This exclusivity provision means that a plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA."[20] *Jefferson v. Lead Industries Ass'n, Inc.*, 930 F. Supp. 241, 244-45 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997).  Importantly, plaintiffs are limited to the theories of liability under the LPLA only when making a claim for "damages" as defined by the LPLA.

Damage under the LPLA is defined as follows:

> Damage means all damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery.  "Damage"

---

[20] The four theories under which a plaintiff can recover in an LPLA action are: (1) that the product in question was unreasonably dangerous in construction or composition; (2) that it was unreasonably dangerous in design; (3) that it was unreasonably dangerous because of inadequate warning; or (4) that it was unreasonably dangerous because of nonconformity to an express warranty. *Id.* at § 2800.54(B)(1–4).

> includes damage to the product itself and economic loss arising
> from a deficiency in or loss of use of the product only to the
> extent that Chapter 9 of Title VII of Book III of the Civil Code,
> entitled "Redhibition," does not allow recovery for such damage
> or economic loss. Attorney's fees are not recoverable under this
> Chapter.

LA. REV. STAT. ANN. § 9:2800.53(5).  Furthermore, "[c]onduct or circumstances that result in liability under [the LPLA] are 'fault' within the meaning of Civil Code Article 2315." LA. REV. STAT. ANN. § 9:2800.52.  By virtue of the LPLA's definition of damages recoverable under the act, tort damages under article 2315 *et seq*. are recoverable from a product manufacturer only under the LPLA.  By virtue of the reference to Chapter 9 of Title VII of Book III of the Louisiana Civil Code,  entitled "Redhibition," damages for breach of contract, including but not limited to redhibition, are recoverable from a product manufacturer under these articles of the Civil Code.  The Louisiana Legislature preserved all causes of action arising under Chapter 9 of Title VII of Book III of the Louisiana Civil Code, entitled "Redhibition" (referred to herein as the "Civil Code carveout"), as viable causes of action against a manufacturer, "to the extent that the claimant seeks to recover the value of the product at issue or other economic loss." *See Pipitone v. Biomatrix*, 288 F.3d 239, 251 (5th Cir. 2002) (internal citations omitted).  The articles appearing in Chapter 9 of Title VII of Book III of the Louisiana Civil Code, although entitled redhibition, cover not only redhibition but also the seller's obligation to deliver a thing reasonably fit for its ordinary use, LA. CIV. CODE ANN. art. 2524,[21] and actions for breach of contract because the

---

[21] Article 2524 provides:

The thing sold must be reasonably fit for its ordinary use.

When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold

thing delivered is not of the kind or quality specified in the contract. LA. CIV. CODE ANN. art. 2529.[22] The articles also allow a buyer to bring an action against a seller who knowingly made a false declaration regarding the quality of a thing either in redhibition or "for fraud against such a seller whenever the requirements of article 1953 are met." LA. CIV. CODE ANN. art. 2545, cmt. (a). *See* Larissa Teipner, *The Damage Carve-Out of the Louisiana Products Liability Act: Are Manufacturers Potentially Liable for Warranty of Fitness?*, 70 La. L. Rev. 615, 617-18 (2010) (citing John Neely Kennedy, *The Dimension of Time in the Louisiana Products Liability Act*, 42 La. B.J. 15, 16 (1994) (LPLA's exclusivity provision only applies to claims for damages as defined in the LPLA). Because the LPLA governs only the scope of a manufacturer defendant's liability under articles 2315, 2315.1, and 2315.2, a plaintiff in a breach of contract based action against a manufacturer-seller seeking damages other than those defined in the LPLA has "access to all the theories of liability that would be available against a non-manufacturing seller." Teipner, 70 La. L. Rev. at 617.

As Judge Vance explained in *McCauslin v. Grinnell Corp.,* No. 97-775, 2000 WL 1655242 (E.D. la. Nov. 3, 2000) (Vance, J.), *reconsideration denied*, 2001 WL 8584 (E.D. La. Jan. 3, 2001), "[w]hile the LPLA governs products liability in *tort*, it does not preclude

---

must be fit for the buyer's intended use or for his particular purpose.

If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

LA. CIV. CODE ANN. art. 2524.

[22] Article 2529 provides:

When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.

LA. CIV. CODE ANN. art. 2529.

recovery for economic loss arising from breach of warranty or breach of contract."[23] *McAuslin*, 2001 WL 8584, at *2 (emphasis in original).   Several cases cited by Judge Vance in *McAuslin* echo this same sentiment.   *See In re Air Bag Prods. Liability Litig.*, 7 F. Supp. 2d 792, 800 (E.D. La. 1998);   *In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548, at *16 n.3 (E.D. La. July 30, 1996) (Vance, J.); *Textron Marine Sys. v. KHD Deutz Motor Industriemotoren GmbH*, No. 94-1808, 1994 WL 518279, at *2 (E.D. La. Sept. 22, 1994) (Livaudais, J.); *Morris v. United Servs. Auto. Ass'n*, 32,528 (La. App. 2 Cir. 2/18/00); 756 So.2d 549, 561; *Draten v. Winn Dixie of La., Inc.*, 94 ,0767 (La. App. 1 Cir. 3/3/95), 652 So.2d 675, 678; and *Monk v. Scott Truck & Tractor*, 619 So.2d 890, 893 (La. App. 3 Cir. 1993)).

NSW relies upon the case of *Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040, 2005 WL 2037419(E.D. La. Aug. 4, 2005) (Fallon, J.), which involved a factual scenario similar to this case, for its argument that C-Innovation is limited to claims under the LPLA and redhibition.   In *Stroderd*, plaintiffs purchased Yamaha motorcycles, only to have the company issue a safety recall a few years later.   *Id.* at *1.   Plaintiffs brought their motorcycles to authorized Yahama dealerships for repairs as directed in the recall notice, but claimed that the repairs took much longer than anticipated.   *Id.* Plaintiffs brought claims against Yamaha for redhibitory defects, breach of contract, negligent repair, and damages under the LPLA.   *Id.*   Yamaha moved to dismiss the breach of contract and

---

[23] *McAuslin* involved a claim for, *inter alia*, breach of contract and breach of warranty against the manufacturer of a defective sprinkler system in the plaintiffs' warehouse.  2001 WL 8584, at *1.  In a motion to reconsider, Grinnell argued, as NSW does in this case, that the "LPLA provides the exclusive theories of liability for damage caused by a manufacturer's products," and that the court must dismiss the plaintiffs' breach of contract and breach of warranty claims.  *Id.*  Judge Vance disagreed, and held that, because the breach of contract and breach of warranty claims fell outside the scope of the LPLA, the LPLA's exclusivity provision did not operate to preclude those claims.  *Id.*, at *2.

negligent repair claims based on the LPLA's exclusivity language. *Id.* at *2. Judge Fallon granted the motion to dismiss these claims, holding that "the plain language and legislative history of the LPLA demonstrate the legislature's intent to make the [LPLA] and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product." *Id.* (citing *In re Air Bag Products Litig.*, 7 F. Supp. 2d at 800, and *Jefferson*, 930 F. Supp. at 244). Judge Fallon also noted that plaintiffs' breach of contract of fitness for ordinary use claim failed because it was subsumed by Louisiana's redhibition law. *Id.*, at *3.

Judge Fallon's opinion in *Stroderd* takes a narrow view on what claims may be pursued outside of the LPLA's exclusivity provision. Judge Fallon held that the LPLA's exclusivity provision means that the only claims a plaintiff may pursue against a manufacturer are for damages under the LPLA and for economic loss due to redhibitory defects. 2005 WL 2037419, at *2. However, in reaching this conclusion, Judge Fallon refers to the Civil Code carveout as only extending to a "redhibition cause of action." *Id.* In reality, the Civil Code carveout preserves to the plaintiff the right to bring causes of action under Chapter 9 of Title VII of Book III of the Civil Code, which includes not only redhibition claims but also contract-based claims such as breach of warranty and breach of contract based fraud pursuant to article 1953. Judge Fallon writes that the LPLA defines damage as, *inter alia*, "all damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that *[a redhibition cause of action]* does not allow recovery for such damage or economic loss." *Stroderd*, 2005 WL 2037419, at *2 (emphasis added) (bracketed language in original). The actual language in Louisiana Revised Statute 9:2800.53(5) defines damage as "all damage to the product itself

and economic loss arising from a deficiency in or loss of use of the product only to the extent that *Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition,'* does not allow recovery for such damage or economic loss." LA. REV. STAT. ANN. § 9:2800.53(5) (emphasis added).  With his shorthand reference to a "redhibition cause of action," Judge Fallon created a limitation on the Civil Code carveout that the drafters of the LPLA did not intend.  *See* Tiepert, 70 La. L. Rev. at 635-644.  A plaintiff may seek economic loss damages under any of the articles contained in the Civil Code carveout, and is not limited only to redhibition.[24]

### C.   The LPLA Does Not Preclude C-Innovation's Fraud Claim with Respect to the Cables Purchased Directly from NSW

With respect to the cables purchased directly from NSW, C-Innovation alleges that NSW's fraudulent conduct induced C-Innovation to enter into a contract with NSW to purchase the cables, even though NSW knew the cables were defective, because NSW did not disclose the defects.  C-Innovation's success on this claim is not predicated on a finding that the cables were "unreasonably dangerous." Nor does NSW's "fault," as defined by the LPLA and article 2315, come into play.  Instead, C-Innovation's fraud claim is based on a breach of contract theory, and any damages incurred as a result of that alleged breach of contract may be recovered by way of a claim for breach of contract based fraud.  *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-750, 2010 WL 892869, at

---

[24] Another case cited by NSW, *Touro Infirmary v. Sizeler Architects*, 04–2210 (La. App. 4 Cir. 11/21/06), 947 So.2d 740, presented facts similar to *Stroderd*.  *Touro* is factually distinguishable from this case with respect to the cables purchased directly from NSW because *Touro* dealt with a breach of express warranty claim against a third party installer/distributor.  With respect to the cables purchased from Schilling and Phoenix, the Court notes that, while the facts of *Touro* may be similar to this case, the *Touro* court employs the same unnecessarily narrow construction of the LPLA's exclusivity provision as *Stroderd*.

*6-8 (W.D. La. Mar. 11, 2010) (James, J.).  As Judge James explained in *Hollybrook Cottonseed*:

> While the exclusivity provision of the LPLA leaves no doubt breach of contract claims against manufacturers for damages caused by their products are subsumed by the LPLA, in cases where a specific part of the injury is caused *only* by the breach of contract, and not by the product itself, a buyer might be able to bring both types of claims against a manufacturer. The Court holds that *in the limited circumstances where a buyer sues a manufacturer for economic damages not covered in redhibition and not caused by the product itself, it may bring a breach of contract claim for those damages, on its own or in addition to a claim for other damages under the LPLA or redhibition.*

*Id.* at *7 (emphasis added).  C-Innovation's breach of contract based fraud claim against NSW fits squarely within the scenario described by Judge James.  The economic damages C-Innovation is seeking are not by virtue of an action in redhibition and are not caused by the product itself.  Thus, C-Innovation may bring a claim for breach of contract based fraud, on its own or in addition to a claim under the LPLA or redhibition.

Several of the cases cited by NSW in support of its motion to dismiss are personal injury cases in which the LPLA clearly applies.  *See Jefferson*,  930 F. Supp. at 244-45 (personal injury claim against manufacturer of lead-based paint); *Scott v. Am. Tobacco Co., Inc.*, 04-2095 (La. App. 4 Cir. 2/1/07); 949 So.2d 1266, 1274 (personal injury class action against various tobacco companies); *In re Air Bag Prods. Liability Litig.*, 7 F. Supp. 2d at 800 (personal injury multidistrict litigation involving manufacturers of defective automobile air bag systems); *Ingram v. Bayer Corp.*, No. 02-352, 2002 WL 1163613, at *2 (E.D. La. May 30, 2002) (Porteous, J.) (personal injury action against manufacturer of defective drug); *Brennon v. Pfizer, Inc.*, No. 09-1093, 2009 WL 2525180, at *3 (W. D. La.

14

Aug. 17, 2005) (James, J.) (same); and *Winslow v. W.L. Gore & Assocs.*, No. 10-116, 2011 WL 866184, at *2 (W.D. La. Jan. 21, 2011) (Kirk, M.J.) (personal injury action against manufacturer of defective medical device).  In a personal injury action in which the plaintiff sues a manufacturer for personal injuries suffered as a result of an unreasonably dangerous product, the LPLA provides the only available cause of action for that plaintiff.[25]  The case at bar, however, is not a personal injury action.  C-Innovation does not allege that the cables at issue caused bodily harm to any person.  The cases cited by NSW are factually and legally distinguishable.[26]

Taking the allegations in the amended complaint as true, as the Court must at this stage in the proceedings, C-Innovation has alleged a facially plausible cause of action for recovery of damages for breach of contract based fraud under Louisiana Civil Code article 1953 with respect to the cables C-Innovation purchased directly from NSW.  Accordingly, to the extent NSW seeks dismissal of C-Innovation's fraud claim with respect to the cables purchased directly from NSW, the motion to dismiss is denied.

### D.    The LPLA Precludes C-Innovation's Fraud Claim with Respect to the Cables Purchased from Schilling and Phoenix

---

[25] *See also Maurice v. Eli Lilly & Co.*, 04-3105, 2005 WL 3542902, at *4 (E.D. La. Nov. 7, 2005) (Duval, J.) (personal injury action against manufacturer of defective drug); *Nelson v. Mylan Pharms., Inc.*, No. 10-591, 2010 WL 3339274, at *3 (W.D. La. Aug. 3, 2010) (Hanna, J.) (same); *Cooper v. Wyeth, Inc.*, No. 09-929, 2010 WL 2653321, at *2 (M.D. La. June 25, 2010) (Brady, J.) (same); *Lewis v. Pfizer Pharm. Co., Inc.*, No. 09-283, 2010 WL 2545195, at *2 (W.D. La. June 18, 2010) (same).

[26] Another case cited by NSW, *Wells v. Gen. Elec. Co.*, No. 08-79, 2008 WL 2026112 (W.D. La. May 8, 2008) (Hicks, J.), involved an allegedly defective washing machine that caught fire and caused damage to plaintiff's real and personal property.  2008 WL 2026112, at *1.  The defendant moved to dismiss all of plaintiff's claims not falling under the LPLA or redhibition.  *Id.*  In response to the motion to dismiss, the plaintiff explained that she was only seeking recovery under the LPLA and redhibition.  *Wells v. Gen. Elec. Co.*, No. 08-79 (W.D. La. Feb. 29, 2008), R. Doc. 14 at p. 1.  Judge Hicks then denied the defendant's motion to dismiss the plaintiff's LPLA and redhibition claims and granted the motion to dismiss any other claims asserted in the petition not falling under either of these categories.  *Id.*, at *2.

The Court now turns to C-Innovation's allegations of fraud against NSW with respect to the cables C-Innovation purchased from Schilling and Phoenix.  Even taking the allegations in the amended complaint as true, there is no allegation that C-Innovation had a contract with NSW for the purchase of these five cables.  As a result, C-Innovation's fraud claim regarding these cables cannot be based in contract or article 1953, but instead must be rooted either in tort, and thus brought under the LPLA, or as a claim that NSW is a bad faith manufacturer/seller for purposes of redhibition, as defined by Louisiana Civil Code article 2545.[27]  Whatever economic loss damages C-Innovation claims to have suffered as a result of NSW's fraudulent conduct with respect to these cables is recoverable under either the LPLA or redhibition, which precludes C-Innovation from asserting any claim not falling into one of these categories.  As a result, NSW's motion to dismiss C-Innovation's breach of contract based fraud claim is granted with respect to the cables C-Innovation

---

[27] Article 2545 provides that:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.  If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.

> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

LA. CIV. CODE ANN. art. 2545.  The Court also notes that, unlike a breach of contract based fraud claim brought under article 1953, which requires privity between the plaintiff and the defendant, a redhibition claim does not require privity between the plaintiff and the manufacturer, because the manufacturer is liable for defects "resulting from the original manufacture" of the product.  *Aucoin v. S. Quality Homes, LLC*, 07-1014 (La. 2/26/08); 984 So.2d 685, 692-93 (citing *Media Prod. Consultants, Inc. v. Mercedes–Benz of N. Am., Inc.*, 262 So.2d 377, 380-81 (La. 1972) and *Rey v. Cuccia*, 298 So.2d 840, 845 (La. 1974)).

purchased from Schilling and Phoenix.[28]

### CONCLUSION

Accordingly, **IT IS ORDERED** that NSW's Rule 12(e) motion for a more definite statement of C-Innovation's fraud claim be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that NSW's motion to dismiss pursuant to Rule 12(b)(6) be and hereby is **GRANTED,** insofar as it seeks to dismiss the claims of C-Innovation's amended complaint with respect to breach of contract based fraud relating to the purchase of cables from Schilling and Phoenix, and **DENIED,** insofar as it seeks to dismiss the claims of C-Innovation's amended complaint with respect to fraud relating to the purchase of cables directly from NSW.

**IT IS FURTHER ORDERED** that NSW shall file an answer to C-Innovation's amended complaint with respect to fraud relating to the purchase of cables directly from NSW no later than **March 22, 2013,** at **5:00 p.m.**

New Orleans, Louisiana, this ___13th___ day of March, 2013.

_Susie Morgan_
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[28] While C-Innovation does not have an independent action for fraud against NSW for the cables purchased from Schilling and Phoenix, C-Innovation is not prohibited from arguing a fraud theory in connection with a claim that NSW was a bad faith manufacturer/seller with respect to these cables.

17